## RECEIVER CHARGED WITH LOSSES FROM OPERATION OF THE BUSINESS.

Common Pleas Court of Hamilton County.

ROBERT L. COLE, PRESIDENT, *vs.* THE UP-TO-DATE TAILORING COMPANY.

Decided, July, 1925.

*Receivers—Duty of to Preserve Estates Placed under their Management—Where a Business is being Run at a Loss the Court should be Advised at Once—Receiver held Personally Liable for Debts Incurred after he Knew the Business was being Operated at a Loss.*

The court finds in this case that the business of the defendant company, was grossly mismanaged, and at the end of five months a loss had been incurred of more than fourteen thousand dollars; that the receiver knew in two weeks that the business was being operated at a loss, but the court was not apprised of the situation or instruction asked of any kind.

*Held*: That while the measure is harsh and should be exercised with caution, the court is of opinion that the receiver should be personally charged with all goods purchased by him after the end of the second month and as to which there is no other way of providing payment.

*Walter D. Murphy, Pogue, Hoffheimer & Pogue, Matthews & Matthews, D. T. Hackett, Samuel Wolfstein,* and *E. H. Brink et al,* for intervening petitioners.

*Julius R. Samuels,* for the receiver.

DARBY, J.

Heretofore, upon the intervening petitions of Isaac Frankel and Mary S. Thoms, this court held that the receiver was chargeable individually with an amount sufficient to pay the claims in full of said intervening petitioners.

Certain creditors of the receiver have filed intervening petitions setting up their claims, and asking that they be charged individually against said receiver. The court has heretofore found, and reaffirms, that the receivership was grossly mismanaged, and that, though the receiver was

familiar with the business of the defendant, that in the period between his appointment, January 17, 1921, and July 1, 1921, there was a total loss in the operation of the business of $14,310.75.

The Supreme Court of Ohio has very recently stated what is the duty of a receiver conducting an unprofitable business, in these words:

"If at any time after the appointment, and during the operation of the business of an insolvent concern, it becomes apparent that the receiver will not be able to pay and discharge the liabilities incurred by him, the operation should be discontinued, and the court should so order." *Richey, et al.* v. *Brett, Receiver*, O. L. R. July 6, 1925, p. 473.

The facts, as shown upon the trial, are that under the receivership this business was run at a loss, which was demonstrated within two weeks, and that the facts were known to the receiver. In less than six weeks there was an accumulated loss in operation approximating sixty-four hundred dollars, and at the end of March the loss had grown to upwards of ten thousand. None of these facts were called to the attention of the court, but despite them the receiver continued the business, each month showing additional losses, until at the close of business in a little over five months, the total loss had run to $14,310.75.

The duty of a receiver in such case is very clearly stated in *In Re Angell*, 131 Mich., 345, on page 350:

"A receiver is an officer of the court, and amenable to it for a proper discharge of the trust confided to him. When he is in doubt as to what he ought to do, he should take the advice of the court."

In *Sav. Bank* v. *Ballbearing Chain Company*, 118 Ia., 698, are some very pertinent statements of the court as to the duty of a receiver in such situation. On page 703 the court say:

"The primary object is the preservation of the property, and every person undertaking the duties of a receivership

must be assumed to appreciate the main and controlling purpose to be subserved in his selection. It is not injustice to him then that the object of his appointment be kept in mind in adjusting his accounts, and that courts, after seizing the property of litigants will not approve its dissipation in useless expenses, or shut their eyes to its loss through the negligence or mismanagement of its officers. Not every act within the letter of an order can be sanctioned, nor everything done without the direction of the court condemned. The tests to be applied are:

"(1) Was the act under investigation within the authority conferred by an order of court?

"(2) If so, was it performed with reference to the preservation of the estate, as a man of ordinary sagacity and prudence would have performed it under like circumstances. * * *

"The property, though temporarily in the keeping of the court, is sheltered by the same rights of ownership as before seized. It 'does not sit as a bandit dividing booty' as was remarked by the New York Court of Appeals in *Attorney General* v. *Insurance Company,* 91 N. Y. 57. Its duty is to see that the property is conserved with the same care as is exacted from trustees generally. The same degree of diligence should be exacted from the receiver in keeping down expenses and shielding the property from unjust exactions as a prudent man would exert in protecting and realizing from his own property. Any other rule would be inconsistent with the high responsibility involved in divesting owners of possession for the purpose of a safer administration and more just distribution by the court. See: *Speiser* v. *Bank* (Wis.) 86 N. W., 243; *Henry* v. *Henry,* (Ala.) 15 S. W. R. 916."

Again in the same report, p. 711 is to be found the following:

"But when it becomes apparent that the business cannot be conducted save at the expense of the estate, and no ulterior benefit is reasonably to be anticipated, the officer, in the exercise of reasonable prudence, in the care of the property intrusted to him, must stop, and proceed no further without specific directions."

Again, p. 713:

"When he (the receiver) discovered that the business could not be carried on without loss, and that the sales, in the manner made, did not amount to enough to meet expenses, it was his plain duty to so advise the court. No prudent man would hold property, knowing it was surely being eaten up by expenses. No trustee can be permitted to do so without the express order of the court, after being fully advised. It is evident that the receiver's accounts cannot be adjusted on the basis proposed in his reports. To do so would be unfair to the litigants, and involve the approval of conduct oblivious to his duty as an officer of the court, and utterly at variance with ordinary notions of business prudence."

While the measure to be applied in such case is a harsh one, and to be exercised with the greatest caution, the court is of the opinion that the receiver utterly failed in the proper discharge of his duties, when he knew that the business was suffering a loss from week to week and month to month, and under those circumstances, when he ordered goods to continue the operation of the business and there is no other means of paying for them, he should be charged personally.

In the attempt to arrive at a just conclusion in the matter, the court has determined that the receiver should have had a reasonable time in which to be thoroughly advised as to the exact situation, and that March 1, 1921 afforded him ample opportunity to realize, as he must, that the business was not capable of being operated except at growing losses.

It is the judgment of the court, therefore, that the receiver should be charged with the claims of the intervening petitioners so far as they relate to orders for goods given after March 1, 1921.